UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

JOHN DIXON,

                  Plaintiff,

     -against-

CITY OF NEW YORK; a municipal entity,
MICHAEL BLOOMBERG, Mayor of the City of
New York, RAYMOND W. KELLY, New York City
Police Commissioner, BRIDGET G. BRENNAN, as
Special Narcotics Prosecutor for the City of New York,
CAPTAIN JOSEPH TERRANOVA, LIEUTENANT
LALLY, DETECTIVE JASON LEVY (Shield # 6945),
DETECTIVE DEROSALIA, DETECTIVE RIOS,
POLICE OFFICER FRIEDMAN, POLICE OFFICER
ALBERT MARVELLI (Shield # 7844), POLICE
OFFICER RINALDI, DETECTIVE STAPLETON,
DETECTIVE DICRESCENTO, DETECTIVE IRIZZARY,
New York City Police Supervisors
and Commanders RICHARD ROEs 1-50,
POLICE OFFICERS JOHN DOE and
RICHARD ROE (names and number of whom are
unknown at present), and other unidentified members
of the New York City Police Department,

                  Defendants.

-------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL DEMANDED**

**CV10- 2220**

**COGAN, J.**

Plaintiff JOHN DIXON ("Plaintiff"), by his attorneys EDWARD DONLON, ESQ., and

ANTHONY CECUTTI, ESQ, complaining of the Defendants, respectfully allege, upon information

and belief as follows:

## NATURE OF ACTION

1.     This is a civil action, pursuant to 42 U.S.C. §1983, 1985 and 1988, seeking

monetary damages for Plaintiff's false arrest, and imprisonment in violation of his fundamental

1

federal constitutional rights to due process of law and to be free of unreasonable search and seizure.

2.      Members of the New York City Police Department (hereinafter "NYPD"), specifically the Brooklyn South Narcotics Division, manufactured incriminating physical evidence and instigated the prosecution of Plaintiff without probable cause to believe Plaintiff to be guilty of the crimes charged.

3.      Prosecutors at the Office of the Special Narcotics, for the City of New York, despite their knowledge of corrupt narcotics practices of the NYPD, Brooklyn South Narcotics Division, related to the instant matter and others, maliciously prosecuted Plaintiff and sought to detain and incarcerate Plaintiff.

4.      Defendant CITY is liable pursuant to Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). Such unconstitutional conduct by the NYPD, Brooklyn South Narcotics Division and the Office of the Special Narcotics, for the City of New York, was tolerated or encouraged by the deliberate or de facto policies, practices or customs of such agencies of Defendant City.

5.      As a result of the aforementioned misconduct, Plaintiff was falsely arrested, maliciously prosecuted and incarcerated for approximately sixty days for crimes that he did not commit and suffered emotional, mental and psychological pain and suffering.

## STATEMENT OF JURISDICTION

6.      This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon

2

this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4) and the aforementioned statutory and constitutional provisions.

7.     Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally based claims and causes of action.

## VENUE

8.     Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

## PARTIES

9.     Plaintiff JOHN DIXON is and was at all times relevant herein a resident of the City of New York, State of New York.

10.     Defendant CITY OF NEW YORK ("Defendant CITY") is a municipal corporation existing by virtue of the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

11.     Defendant BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the NYPD, and is responsible, in whole and/or in part, for the creation, implementation,

3

promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

12.     Defendant KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

13.     Defendant BRENNAN is and was at all times relevant herein, the Special Narcotics Prosecutor, City of New York, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. She is being sued herein in her individual and official capacity.

14.     Defendant TERRANOVA is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he was involved in the false arrest of Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

15.     Defendant LALLY is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

16.     Defendant LEVY is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

17.     Defendant DEROSALIA is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

18.     Defendant RIOS is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

19.     Defendant FRIEDMAN is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

20.     Defendant MARVELLI is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

21.     Defendant RINALDI is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

22.     Defendant STAPLETON is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

23.     Defendant DICRESCENTO is and was at all times relevant herein an officer, employee, and agent of the NYPD. On August 24, 2007, in which he falsely arrested Plaintiff, he was assigned to the 61st precinct. He is being sued in his individual capacity.

24.     New York City Police Supervisors and Commanders Richard Roes 1-50 are and were at all times relevant herein involved in the implementation of the challenged policies and practices in question herein to unreasonably seize, detain and incarcerate Plaintiff, or failed to intervene to prevent violations of Plaintiff's constitutional rights on August 24, 2007. They are

sued individually and in their official capacities.

25.     New York City Police Officers John Doe and Richard Roe (names and number of whom are unknown at present), and other unidentified members of the NYPD, are and were at all times relevant herein officers, employees and agents of the NYPD. Officers John Doe and Richard Roe are being sued herein in their individual capacities.

26.     Upon information and belief, Defendants BLOOMBERG, KELLY, BRENNAN, and New York City Police Supervisors and Commanders Richard Roes 1-50, were personally involved in formulating and/or implementing the policies and procedures that resulted in Plaintiff's unlawful arrest and incarceration on August 24, 2007.

27.     At all times relevant herein, Defendants BLOOMBERG, KELLY, BRENNAN and New York City Police Supervisors and Commanders Richard Roes 1-50, either personally or through their subordinates, acted under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or the City of New York.

28.     Each and all of the acts of the Defendants alleged herein were undertaken by said Defendants while acting in the course and scope of their duties and functions as agents, employees, and officers of Defendant CITY and/or the NYPD and/or the Office of Special Narcotics, when engaging in the conduct described herein.

29.     At all times relevant herein, Defendants acted for and on behalf of Defendant CITY and/or the NYPD and/or the Office of Special Narcotics in furtherance of their employment by Defendant CITY, with the power and authority vested in them as officers, agents and employees of the CITY and/or the NYPD and/or the Office of Special Narcotics and/or

6

incidentally to the lawful pursuit of their duties as officers, employees and agents of the City and/or the NYPD and/or the Office of Special Narcotics.

## DEFENDANTS' POLICIES, CUSTOMS, AND PRACTICES

### Defendants' policy, custom, or practice of engaging in narcotics corruption

30.     Upon information and belief, Defendants CITY, BLOOMBERG, KELLY, TERRANOVA, LALLY and New York City Police Supervisors and Commanders Richard Roes 1-50 permitted, supported and tolerated a policy, custom or practice of members of the NYPD, Brooklyn South Narcotics Division, to engage in corruption involving narcotics arrests.

31.     According to a five month long investigation conducted by the Internal Affairs Bureau (hereinafter "IAB") members of the NYPD, Brooklyn South Narcotics Division, falsified records and withheld property from narcotics arrests, specifically drugs and drug paraphernalia, and money, with the purpose of paying off confidential informants and planting incriminating evidence to effectuate additional arrests.  The investigation began after a Brooklyn South Narcotics officer, Sean Johnstone, informed a fellow officer, in a recorded conversation, that he and his partner, police officer Julio Alvarez, had paid confidential informants with cocaine illegally seized from a crime scene.  Mr. Johnstone, and three other officers were arrested for illegally providing drugs or money to their confidential informants, while another twelve were suspended or transferred to other duties. Officers Johnstone and Alvarez, who have been on the force since 2001, were charged with official misconduct, falsifying business records and filing false documents.

7

32.     As a result of the investigation conducted by the IAB, members of the NYPD, Brooklyn South Narcotics Division, were arrested, suspended, transferred and or demoted. Defendants TERRNOVA and LEVY were transferred and Defendant LALLY was reassigned as a result of their involvement and participation in the above policy, custom or practice. Defendant LALLY was Mr. Johnstone's supervisor and was responsible for overseeing his conduct. Furthermore, a new commanding officer was appointed to run the department's narcotics unit.

33.     Pursuant to the above policy, custom or practice, pattern, Plaintiff was falsely arrested and maliciously prosecuted.  Such policies, customs or practices of Defendants CITY, BLOOMBERG, KELLY, TERRANOVA, LALLY and New York City Police Supervisors and Commanders Richard Roes 1-50, of paying off confidential informants with narcotics and planting incriminating evidence violated Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution, their counterpart provisions in the New York State Constitution, and New York State statutory and common law.

34.     Upon information and belief, Defendant BRENNAN permitted, supported and tolerated a policy, custom or practice of members of the NYPD, Brooklyn South Narcotics Division, to engage in corruption involving narcotics arrests. Defendant BRENNAN and prosecutors at the Office of the Special Narcotics, for the City of New York, despite their knowledge of corrupt narcotics practices of the NYPD, Brooklyn South Narcotics Division, related to the instant matter, nonetheless maliciously prosecuted Plaintiff and sought to detain and incarcerate Plaintiff.

## STATEMENT OF FACTS

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

35.     Plaintiff, JOHN DIXON, on October 2, 1991, was sentenced to serve a prison term of ten years to life for attempted murder in the second degree.  He was in the custody of the New York State Department of Correctional Services from November 1, 1991 until August 22, 2006 when he was paroled.

36.     As part of the conditions of his parole, Plaintiff is required to participate in random drug testing.  Plaintiff has never failed a drug test.

37.     On August 24, 2007, at approximately 1:30 a.m., Plaintiff and his fiancée, Mitshawn Wilson-Patterson, arrived at 3042 Avenue V, Apt 3C, 11229 in Kings County, State of New York.

38.     On August 24, 2007, Ms. Wilson-Patterson was approximately eight weeks pregnant with Plaintiff's child.

39.     Plaintiff temporarily rented a room at the above address from Mr. Reginald Lyte.

40.     He had rented the room for approximately 3 ½ months prior to the incident on August 24, 2007 and slept there approximately two nights per week.

41.     Mr. Lyte and his mother were the tenants of record for 3042 Avenue V, Apt 3C, 11229.

42.     Plaintiff was not a tenant of record for 3042 Avenue V, Apt 3C, 11229.

43.     Plaintiff's primary address at the time of the incident was 345 Dumont Avenue, Brooklyn, New York 11212 – the residence of Ms. Mitshawn Wilson-Patterson.

44.     At approximately 1:30 a.m. on August 24, 2007, at 3042 Avenue V, Apt 3C, 11229, more than ten people, including Mr. Lyte, Mr. Ramadan Latif, and Mr. Elgin Bendow, were present

9

for a party.

45.   Mr. Latif and Mr. Bendow are friends of Mr. Lyte.

46.   Mr. Latif and Mr. Bendow were often present at 3042 Avenue V, Apt 3C, 11229. They regularly slept at this address and were given access to all areas of the apartment, including Plaintiff's room. Mr. Latif and or Mr. Bendow frequently slept in Plaintiff's room.

47.   Plaintiff's room consisted of a bed, television and clothing.

48.   Plaintiff and Ms. Wilson-Patterson decided to stay the night at 3042 Avenue V, Apt 3C, 11229 as they needed to get up early in the morning to go to work.

49.   On August 24, 2007, Plaintiff worked full time as a delivery driver for Stadium Motors.

50.   On August 24, 2007, at approximately 6:00 a.m., Plaintiff and Ms. Wilson-Patterson heard a loud noise.

51.   Plaintiff, dressed only in his underwear, immediately went to the front door of the apartment.

52.   Plaintiff heard voices outside the apartment yell, "Police, open up!"

53.   Plaintiff observed Defendants, CAPTAIN TERRANOVA, LIEUTENANT LALLY, DETECTIVE LEVY, DETECTIVE DEROSALIA, DETECTIVE RIOS, POLICE OFFICER FRIEDMAN, POLICE OFFICER MARVELLI, POLICEOFFICER RINALDI, DETECTIVE STAPLETON, DETECTIVE DICRESCENTO, and DETECTIVE IRIZZARY (hereinafter "Individual Police Defendants") knock the front door off its hinges and rush into the apartment.

54.    The Individual Police Defendants repeatedly yelled, "Where are the guns?" They immediately confronted Plaintiff, threw him to the ground and handcuffed him.

55.    Plaintiff was brought to the living room area.

56.    Some of the Individual Police Defendants searched the premises and found Mr. Lyte, Mr. Latif and Mr. Bendow in Mr. Lyte's bedroom, handcuffed them, and brought them into the living room area.

57.    The Individual Police Defendants yelled at Plaintiff and the three other men, "Where are the guns? Where are the guns?" and "Who's Showtime?"

58.    Plaintiff did not respond as he had no information to provide.

59.    Startled, Ms. Wilson-Patterson began screaming as some of the Individual Police Defendants entered the room where she had been sleeping.

60.    Ms. Wilson-Patterson began bleeding.  Believing she was miscarrying she yelled for 911 to be called.

61.    Some of the Individual Police Defendants left the room.

62.    One of the Individual Police Defendants brought Ms. Wilson-Patterson out of the room.

63.    Ms. Wilson-Patterson was handcuffed.

64.    A female officer was called by one of the Individual Police Defendants to the apartment.

65.    Ms. Wilson-Patterson was escorted from the apartment.

66.    Plaintiff still in his underwear, requested clothing.  The Individual Police Defendants provided clothing to Plaintiff, including footwear.  Such clothing and footwear were not Plaintiff's.

11

Plaintiff told the Individual Police Defendants that the clothing and footwear were not his.

67.     Mr. Lyte, and Mr. Latiff and Mr. Bendow, who were sleeping in Mr. Lyte's bedroom, were arrested after the Individual Police Defendants found at least five hundred milligrams of crack cocaine, drug paraphernalia, and ammunition in Mr. Lye's bedroom and apartment.

68.     Mr. Lyte, Mr. Latiff and Mr. Bendow were each charged with criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fifth degree, criminally using drug paraphernalia in the second degree, unlawful possession of ammunition, criminal possession of a controlled substance in the fourth degree.

69.     The Individual Police Defendants accused Plaintiff of possessing narcotics after they allegedly recovered forty glassines of heroin from a window sill connected to Mr. Lyte's room and the room where Plaintiff and Ms. Wilson were sleeping and three zips of crack in the footwear given to Plaintiff to wear.

70.     Plaintiff was arrested and charged with criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree and criminal possession of a controlled substance in the seventh degree.

71.     Ms. Wilson-Patterson was not arrested.

72.     Ms. Wilson-Patterson went to the hospital on her own and without police accompaniment where she subsequently miscarried.

73.     While awaiting arraignment, Plaintiff was held at the 61st Precinct.

74.     At the 61st Precinct, Defendant LALLY told Plaintiff that if he knew where "the guns were," he would make the "charges go away" against Plaintiff or give information related to anyone with guns or drugs.

75.     Plaintiff had no information about guns or drugs to offer.

76.     Defendant LALLY gave Plaintiff his personal cell phone number and instructed him to call him when he was "ready to talk."

77.     Plaintiff was arraigned in Manhattan Criminal Court on August 25, 2007. Plaintiff entered a plea of not guilty. Despite his prior attempted murder conviction, bail was set at two thousand five hundred dollars cash bail.

78.     Plaintiff was held by the New York City Department of Corrections for approximately sixty days until he posted bail.

79.     While held by the New York City Department of Corrections, Plaintiff called Defendant LALLY several times, asking him why he was arrested and pleading with him to release him as he was innocent of all charges against him.

80.     Defendant LALLY and the other Individual Police Defendants engaged in no further investigative efforts regarding Plaintiff's claim of innocence.

81.     As a result of the arrest, a parole hold was issued against Plaintiff.

82.     The Division of Parole conducted an investigation into the charges against Plaintiff.

83.     The Division of Parole, based on their investigation, dismissed all their charges against Plaintiff.

84.     Throughout the course of the criminal case, Plaintiff asserted his innocence.

85.     Despite facing a potential lengthy prison sentence upon conviction at trial, he rejected all plea offers from Defendant BRENNAN, Office of Special Narcotics.

86.     Defendant BRENNAN and prosecutors at the Office of the Special Narcotics, for the City of New York, despite their knowledge of corrupt narcotics practices of the NYPD,

Brooklyn South Narcotics Division, related to the instant matter, nonetheless maliciously prosecuted Plaintiff and sought to detain and incarcerate Plaintiff.

87.  In April, 2009, Plaintiff was acquitted of all counts contained in the Indictment.

88.  The jury deliberated for approximately fifteen minutes.

## Plaintiff's Injuries and Damages

89.  As a direct and proximate consequence of the aforementioned actions by the Defendants, Plaintiff:

(1) Suffered approximately sixty days of imprisonment;

(2) Suffered severe emotional and mental anguish and pain;

(3) Suffered severe psychological injuries;

(4) Was denied his state and federal constitutional rights and liberties;

(5) Was denied the opportunity to pursue normal relationships with and to enjoy the companionship of family members and friends;

(6) Was publicly shamed, disgraced, ridiculed and humiliated and suffered damage to reputation;

(7) Incurred substantial legal fees;

(8) Was denied opportunity for gainful employment and income;

(9) Suffered permanent impairment of earning power;

(10) Continues to suffer from psychological injuries, emotional and mental anguish and pain; and

(11) Incurred other items of attendant damages.

14

## FIRST CAUSE OF ACTION

### Deprivation of Due Process Under 42 U.S.C. §1983

90.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "89" above as if fully set forth herein.

91.     The Individual Police Defendants, individually and collectively, manufactured, acted in concert to manufacture, aided and abetted each other to manufacture, and/or conspired to manufacture, "physical" evidence which they intended for use against Plaintiff in criminal proceedings, and/or which they caused to be used as a basis for Plaintiff's arrest, prosecution and conviction.

92.     Without the physical evidence, namely, heroin and crack, which the Individual Police Defendants wrongfully manufactured or knew, had been wrongfully manufactured, there would have been no basis to arrest, prosecute or convict Plaintiff.

93.     Furthermore, knowing that the only evidence against Plaintiff was manufactured, the Individual Police Defendants, despite lacking probable cause to believe Plaintiff had committed any crime, nevertheless arrested, or caused Plaintiff to be arrested, for such crimes.

94.     The Individual Police Defendants intended to confine, or to cause the confinement, of Plaintiff.

95.     Plaintiff was conscious of his confinement and did not consent thereto.

96.     Plaintiff's confinement was not otherwise privileged.

97.     The Individual Police Defendants also initiated, and/or caused the initiation and continuation, of criminal proceedings against Plaintiff.

98.     They did so by misleading the Grand Jury and/or the trial jury in the underlying

15

criminal case concerning the evidence against Plaintiff.

99.    The initiation and continuation of the criminal prosecution resulted in Plaintiff being deprived of his liberty.

100.   There was no probable cause for the commencement or the continuation of the criminal proceeding.

101.   Defendants acted with utter and deliberate indifference to and disregard for Plaintiff's rights under the Constitution and laws of the United States.

102.   The aforesaid conduct of Defendants operated to deprive Plaintiff of his rights under the Constitution and the laws of the United States:

(a)    Not to be deprived of his liberty or property or to be arrested, detained or imprisoned except upon probable cause to believe him guilty of a crime (Fourth and Fourteenth Amendments);

(b)    To timely disclose to the appropriate authorities and/or to the criminal defendant all evidence favorable to such defendant, within the meaning of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and the Due Process Clauses of the Fifth and Fourteenth Amendments);

(c)    Not to have false, misleading or inherently unreliable "evidence" manufactured, for the purpose of using such "evidence" against him in connection with criminal proceedings, all in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments;

(d)    Not to be arrested, indicted, prosecuted, detained, convicted or imprisoned through the use of false, fabricated, misleading, or inherently unreliable "evidence," or through the testimony or statements of witnesses who have been improperly influenced or manipulated to provide such testimony or statements, or through the wrongful withholding of material evidence favoring the defendant, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, the right to Grand Jury indictment under the Fifth and Fourteenth Amendments, the right to reasonable bail under the Fifth, Eighth and Fourteenth Amendments, and the right to be free of unreasonable search and seizure and deprivation of liberty or property under the Fourth and Fourteenth Amendments.

103.    The foregoing violations of Plaintiff's federal constitutional rights by Defendants were a direct, proximate and substantial cause of Plaintiff's denial of liberty, right to a fair trial, unjust conviction, and approximately sixty days of imprisonment.

104.    The foregoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

105.    Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly and/or with deliberate indifference to Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

106.    By reason of the foregoing, all the Defendants are liable to Plaintiff for violating, acting in concert to violate, aiding and abetting each other to violate, and/or conspiring to violate, Plaintiff's federal constitutional rights, pursuant to 42 U.S.C. § 1983.


## SECOND CAUSE OF ACTION

### Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983

107.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "106" above as if fully set forth herein.

108.    All of the aforementioned acts of the Defendants, their agents, servants and employees, were carried out under the color of state law.

109.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of

17

42 U.S.C. § 1983.

110. The acts complained of were carried out by the aforementioned Individual Police Defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

111. The acts complained of were carried out by the aforementioned Individual Police defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the NYPD, all under the supervision of ranking officers of said department.

112. The Individual Police Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**THIRD CAUSE OF ACTION**

**False Arrest Under 42 U.S.C. § 1983**

113. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "112" above as if fully set forth herein.

114. As a result of the aforesaid conduct by the Defendants, Plaintiff was subjected to an illegal, improper and false arrest by the Individual Police Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated, without any probable cause, privilege or consent.

115. As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other

physical restraints, without probable cause.

## FOURTH CAUSE OF ACTION

### Malicious Prosecution Under 42 U.S.C. § 1983

116.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "115" above as if fully set forth herein.

117.   The Individual Police Defendants misrepresented and falsified evidence before the District Attorney.

118.   The Individual Police Defendants did not make a complete and full statement of facts to the District Attorney.

119.   The Individual Police Defendants withheld exculpatory evidence from the District Attorney.

120.   The Individual Police Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff.

121.   The Individual Police Defendants lacked probable cause to initiate criminal proceedings against Plaintiff.

122.   The Individual Police Defendants acted with malice in initiating criminal proceedings against Plaintiff.

123.   The Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff.

124.   The Defendants lacked probable cause to continue criminal proceedings against Plaintiff.

19

125.    The Defendants acted with malice in continuing criminal proceedings against Plaintiff.

126.    The Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

127.    Notwithstanding the perjurious and fraudulent conduct of the Defendants, the criminal proceedings were terminated in Plaintiff's favor when Plaintiff was acquitted of all charges against him in April, 2009.

## FIFTH CAUSE OF ACTION

### Malicious Abuse of Process Under 42 U.S.C. § 1983

128.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "127" above as if fully set forth herein.

129.    The Individual Police Defendants issued legal process to place Plaintiff under arrest.

130.    The Individual Police Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

131.    The Individual Police Defendants acted with intent to do harm to Plaintiff without excuse or justification.

## SIXTH CAUSE OF ACTION

### Conspiracy Under 42 U.S.C. § 1983

132.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "131" above as if fully set forth herein.

133.    The Individual Police Defendants, collectively and individually, entered into an agreement to act in concert to deprive Plaintiff of his constitutional rights.

134.    In participating in the false arrest and malicious prosecution of Plaintiff, the Individual Police Defendants committed overt acts in furtherance of the conspiracy.

135.    As a result of the foregoing, Plaintiff sustained, *inter alia*, emotional distress, embarrassment, and humiliation, damage to reputation, and deprivation of his constitutional rights.

### SEVENTH CAUSE OF ACTION

### Conspiracy Under 42 U.S.C. § 1985

136.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "135" above as if fully set forth herein.

137.    The Defendants, collectively and individually, entered into an agreement to act in concert to deprive Plaintiff of his constitutional right to equal protection under the law.

138.    In participating in the false arrest and malicious prosecution of Plaintiff the Defendants committed overt acts in furtherance of the conspiracy.

139.    Defendants' actions were motivated by animus toward Plaintiff.

140.    As a result of the foregoing, Plaintiff sustained, *inter alia*, emotional distress, embarrassment, and humiliation, damage to reputation, and deprivation of his constitutional rights.

### EIGHTH CAUSE OF ACTION

### (Monell/42 U.S.C. § 1983 Claim Against Defendant City of New York and Bridget G. Brennan as Special Narcotics Prosecutor, Office of the Special Narcotics Prosecutor for the City of New York)

21

141.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "140" above as if fully set forth herein.

142.    The foregoing violations of Plaintiff[]s federal constitutional rights and resultant injuries were further directly, proximately and substantially caused by conduct, chargeable to Defendant CITY, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, subject to investigation by the NYPD and the Office of the Special Narcotics Prosecutor for the City of New York (hereinafter "Office of Special Narcotics"), and/or to prosecution by such Office, namely:

a) the institution and implementation of grossly negligent, reckless and/or deliberately inadequate or unlawful policies, procedures, regulations, practices and/or customs concerning:

    i.    the duty not to manufacture for use in criminal investigations or proceedings, or to use in such matters, false, misleading or unreliable evidence, testimony, statements and argument;

    ii.    the continuing obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements and argument, whenever such misconduct is discovered to have occurred, including overturning convictions discovered to have been obtained through such unconstitutional means;

    iii.    the continuing duty to preserve and to make timely disclosure to the appropriate parties, including prosecutorial authorities and/or the defense, during criminal investigations and/or prosecutions, of all material evidence or information favorable to a person suspected, accused or convicted of criminal conduct; the duty not to arrest or prosecute a criminal suspect except upon probable cause to believe him guilty of an offense; the duty to reasonably pursue and investigate exculpatory leads and unreliable information and/or;

b) the deliberate indifference by policymaking officials at the NYPD and the Office of Special Narcotics with respect to their obligation to properly instruct, train, supervise and discipline their employees, including the individual defendants in this case, with respect to such matters.

143.    The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendant CITY, including, but not limited to, the Office of Special Narcotics and the New York City Police Commissioner, who knew:

   a) to a moral certainty that such policies, procedures, regulations, practices and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

   b) that such issues either present employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of employees mishandling such situations; and

   c) that the wrong choice by municipal employees concerning such issues will frequently cause the deprivation of the constitutional rights of a criminal suspect or accused and cause him constitutional injury.

144.    Despite their knowledge of said policies, procedures, regulations, practices and/or customs, the supervisory and policymaking officers and officials of the Defendant CITY, as a matter of policy, perpetuated, or failed to take preventative or remedial measures to terminate, said policies, procedures, regulations, practices and/or customs, did not discipline or otherwise properly supervise the individual personnel who engaged in them, did not effectively instruct, train and/or supervise such personnel (including the Defendants herein) with regard to the proper constitutional and statutory requirements in the exercise of their authority, but instead sanctioned the policies, procedures, regulations, practices and/or customs, described above, with a deliberate indifference to the effect of said policies, procedures, regulations, practices and/or customs upon the constitutional rights of residents and citizens of the State of New York.

145.    The aforesaid policies, procedures, regulations, practices and/or customs of Defendant CITY were collectively and individually a substantial factor in bringing about the aforesaid violations of Plaintiff's rights under the Constitution and laws of the United States and in causing his damages.

146.    Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising and disciplining police personnel with respect to the investigation and prosecution of criminal matters, the disclosure of evidence to prosecutorial authorities or defendants, and the rights of criminal suspects and defendants, including the rights not to be subject to false arrest, malicious prosecution, and/or the manufacture and use in criminal proceedings of false or misleading evidence and testimony in violation of due process of law.

147.    The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a City policymaker for whom the City is liable, with respect to the above-mentioned areas.

148.    During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices sufficient to deter and to avoid conduct by his subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

149.    Under the principles of municipal liability for federal civil rights violations, the Special Narcotics Prosecutor of the Office of Special Narcotics (or her authorized delegates) has final managerial responsibility for training, instructing, supervising and disciplining attorneys

24

and other employees in her office regarding their conduct in the investigation and prosecution of

criminal matters, including, but not limited to, the disclosure of exculpatory evidence or <u>Brady</u>

material to appropriate authorities and to the defense, and the safeguarding of the rights of

criminal suspects and defendants, including the rights not to be subject to false arrest, malicious

prosecution, and/or the manufacture and use of false or misleading evidence, testimony, and

argument in violation of due process of law.

150.    The Special Narcotics Prosecutor of the Office of Special Narcotics, personally

and/or through her authorized delegates, at all relevant times had final authority to promulgate

and implement policies and procedures, including policies and procedures as to personal hiring,

training and supervision, with respect to her Office's performance of its duties.

151.    The Special Narcotics Prosecutor of the Office of Special Narcotics, BRIDGET

G. BRENNAN, personally and/or through her authorized delegates, at all relevant times had final

authority, and constituted a City policymaker for whom the City is liable, with respect to the

above-mentioned areas, including but not limited to the investigation and prosecution of felony

narcotics offenses.

152.    During all times material to this Complaint, the Special Narcotics Prosecutor,

BRIDGET G. BRENNAN, owed a duty to the public at large and to Plaintiff, which she

knowingly and intentionally breached, or to which she was deliberately indifferent, to implement

policies, procedures, customs and practices sufficient to deter and to avoid conduct by her

subordinates violating the aforementioned constitutional rights of criminal suspects or defendants

and of other members of the public.

153.    All of the foregoing acts by the Defendants deprived Plaintiff of federally

protected rights, including, but not limited to, the right:

> A. Not to be deprived of liberty without due process of law;
>
> B. To be free from seizure and arrest not based upon probable cause;
>
> C. To be free from unwarranted and malicious criminal prosecution;
>
> D. To be free from malicious abuse of process; and
>
> E. Not to have cruel and unusual punishment imposed upon him;

## **JURY TRIAL DEMAND**

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a.   For compensatory damages in an amount to be determined;

b.   For punitive damages against the Defendants in an amount to be determined;

c.   For reasonable attorneys' fees, together with costs and disbursements, pursuant to 42 U.S.C. §1988 and to the inherent powers of this Court's discretion;

d.   For pre-judgment interest as allowed by law; and

e.   For such other and further relief as this Court may deem just and proper.

Dated:   May 10, 2010
         New York, New York

BY: EDWARD DONLON
110 Wall Street, 11th Floor
New York, New York 10005
(646) 691-6380

BY: ANTHONY CECUTTI
100 Lafayette Street, Suite 401
New York, New York, 10013
(917) 741-1837

ATTORNEYS FOR PLAINTIFF

TO:   CITY OF NEW YORK
      c/o Corporation Counsel
      100 Church Street
      New York, New York  10007

      MICHAEL BLOOMBERG
      c/o Corporation Counsel
      100 Church Street
      New York, New York  10007

      RAYMOND W. KELLY
      c/o Corporation Counsel
      100 Church Street
      New York, New York  10007

      BRIDGET G. BRENNAN
      Special Narcotics Prosecutor for the City of New York
      Office of the Special Narcotics Prosecutor
      80 Centre Street, 6th Floor
      New York, New York 10013

      CAPTAIN JOSEPH TERRANOVA
      New York City Police Department
      One Police Plaza
      New York, New York 10038

27

LIEUTENANT LALLY
New York City Police Department
One Police Plaza
New York, New York 10038

DETECTIVE JASON LEVY (Shield # 6945)
Narcotics Borough Queens
One Police Plaza, Narcotics Division
New York, New York 10038

DETECTIVE DEROSALIA
New York City Police Department
One Police Plaza
New York, New York 10038

DETECTIVE RIOS
New York City Police Department
One Police Plaza
New York, New York 10038

POLICE OFFICER FRIEDMAN
New York City Police Department
One Police Plaza
New York, New York 10038

POLICE OFFICER ALBERT MARVELLI (Shield # 7844)
Narcotics Brooklyn South
One Police Plaza, Narcotics Division
New York, New York 10038

POLICEOFFICER RINALDI
New York City Police Department
One Police Plaza
New York, New York 10038

DETECTIVE STAPLETON
New York City Police Department
One Police Plaza
New York, New York 10038

DETECTIVE DICRESCENTO
New York City Police Department
One Police Plaza
New York, New York 10038

DETECTIVE IRIZZARY
New York City Police Department
One Police Plaza
New York, New York 10038

## ATTORNEY VERIFICATION

State of New York    )
                       )     ss.:
County of New York  )

        EDWARD DONLON, ESQ. and ANTHONY CECUTTI, ESQ., attorneys duly admitted to practice before the courts of the State of New York, affirm the following under penalty of perjury:

        We represent the Plaintiff in this action.  We have read the foregoing and know the contents thereof; the same is true to our own knowledge, except as to matters therein stated to be alleged on information and belief, and that as to those matters deponent believes them to be true.  The reason this verification is made by us and not by the Plaintiff is that he resides outside of New York County, the location of our offices.

 

EDWARD DONLON, ESQ.

 

ANTHONY CECUTTI, ESQ.